The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now setting. God save the United States and this Honorable Court. All right. Be seated, please. All right. The first case we'll hear this morning is United States v. McLaurin. And I guess Mr. McBeth will hear from you first. Thank you and good morning, Your Honors. My name is Cullen McBeth and I represent the appellant John McLaurin. Your Honors, the district court revoked Mr. McLaurin's supervised release and sent him to prison because he violated supervised release conditions with which he was not, in fact, required to comply. This Court held in United States v. Rogers and United States v. Singletary that if discretionary supervised release conditions are not orally pronounced at sentencing but later appear in the written judgment, then they are, quote, nullities that are not part of the defendant's sentence, and the defendant and those conditions, quote, in fact, have not been imposed on the defendant. In this case, the district court revoked Mr. McLaurin's supervision after finding he violated standard conditions 6 and 10, but those conditions were not orally pronounced at Mr. McLaurin's original sentencing in 2013, and so they are not part of his sentence. The government does not dispute that if a particular condition is not a part of a defendant's sentence, the defendant cannot be revoked and imprisoned for violating that condition. Instead, the government raises a procedural – a host of procedural objections, all of which ultimately rest on the same premise, that once a judgment becomes final following the conclusion of direct appeal, any orally unpronounced discretionary conditions in that judgment become part of the sentence, even though they were not a part of the sentence before. But there is no legal support for that position, and in fact, this Court's case law definitively rejects it. I'm referring to United States v. Newby. In that case, the original judgment contained discretionary conditions that were not orally pronounced at sentencing. The defendant then took a direct appeal and lost, which means his judgment became final. A decade later, when the district court granted a motion to modify the defendant's sentence under the First Step Act, the district court copied and pasted the orally unpronounced discretionary conditions from the old judgment into the amended judgment. This Court held that the copied and pasted conditions were a, quote, new part of the defendant's sentence, that is, a term that was not a part of the original sentence, even though the judgment containing those conditions had long since become final. Let me ask you this. Just in 2013, Judge Bredar, who was very conscientious, was following what was the law at the time. He read the special conditions, and the rest were just put in the judgment. What you're asking us, I guess, is to reopen his judgment. Based on the Rogers decision, which, of course, he didn't have the benefit of in 2013. Today, there would be a Rogers error. I think everybody agrees there's a Rogers error. I think the question is, do we go back in revocation proceedings and review earlier judgments? So, Your Honor, we are not asking this Court to revise, reopen, in any way disturb the original 2013 judgment. The judgment is final and it can stay exactly the way it is. And the reason we're not asking the Court to do anything to that judgment is that when, as in this case, there is a discrepancy between the oral sentence and the written judgment. See, back then, though, that wasn't considered a discrepancy. If the judge said you have to go to a rehabilitation center every three days, and then the judgment says five days, that has to be resolved. And in those days, we always resolved it in favor of the oral. But there was never a requirement to read or impose the conditions, unless they accept the special conditions. And there was a judgment, a written judgment, signed with everything on it. And he had that judgment. So at that time, the judgment was not erroneous. Under we recognize, under Rogers, it would not stand up. So my question really is whether we should be going back and opening up earlier judgments. I mean, that's basically where you'd be reviewing it. Because today, I mean, back then, the judgment was written, was pronounced orally, and it was written on paper. And everybody had access and knew what the conditions were. They just had to read the paper. Correct, Your Honor. And certainly, you know, we're not criticizing Judge Bradar. No one back then knew that Rogers was going to come along. So there's no mistake, you know, on the part of Judge Bradar. But, again, we're not asking the Court to do anything to the 2013 judgment.  You're asking us to declare the conditions which were imposed legally in the judgment back then. You're saying those conditions shouldn't be imposed, which is basically reviewing that judgment and changing it. Respectfully, I disagree, Your Honor. The point of Rogers is those conditions were never imposed. They weren't imposed. Well, that's what Rogers and Singletary says. But that was not the law back in 2013. No, Your Honor. But there are many cases that this Court has decided after Rogers where judgments that were the defendant was sentenced before Rogers, nevertheless, after Rogers, he has his direct appeal and says those conditions, you know, there's discrepancy and this Court corrects them, even though at the time the judgment was entered, the law was different. So this Court has never said that just because Rogers was not on the books when a judgment was entered, that somehow that rule that Rogers announced later doesn't apply. The Court has done that many times. It has applied Rogers to cases where the judgment was entered before Rogers came out, and so we're asking this Court to honor what the sentence has always been. The sentence has always been the oral sentence, which is one that does not include these standard conditions. In the cases that you're discussing where we found that the Rogers error existed before the Rogers decision was came down, was the issue raised at the revocation hearing? I wonder why here, the two days after the revocation hearing was when the appeal notice was filed and for the first time the Rogers issue was raised on appeal where the revocation hearing took place two days earlier, why didn't the at that point during the revocation hearing, why wasn't the Rogers issue raised then? So to clarify, Your Honor, when I said that this Court has decided Rogers cases where the judgment was entered before Rogers, I'm talking about cases not where there was a subsequent revocation hearing, but where the first direct appeal was filed, held in abeyance for a long time, and then subsequently after Rogers came down, the Court addressed the Rogers error. As for why the error was not raised below, I don't know. I think probably everyone just missed it. You know, that happens sometimes, and we certainly acknowledge that it wasn't raised below, and therefore, plain error applies. So we are required to satisfy the four prongs of plain error, but we think we've done that in this case. We think we've done that in this case. Is it retroactive? Is Rogers retroactive? If, well, by the way. Yes or no? Is it? Yes. That's what I'm saying. I'm surprised why you just say so. It's been applied retroactively in the Fourth Circuit, correct? Correct. Many times, Your Honor. Yes, this Court has, you know, I don't have a list at my fingertips, but there are many cases in which this Court has said that Rogers applies to judgments that were entered before Rogers. And this is also relevant to the mandate rule issue that the government raises. The government says the mandate rule applies here because the first judgment in 2013 somehow made it settled that the orally unpronounced discretionary conditions became part of the sentence. But, first of all, Newby makes clear they did not become part of the sentence. So the mandate in the first case didn't settle that. But even if the mandate somehow settled that from the 2013 appeal, there is an exception to the mandate rule for when there's a change in law that gets applied retroactively to your question, Judge Gregory. So why isn't this just invited error? Your client, there were, as I understand it, many issues. Five and six were the only ones that were based on what you now say are null conditions. The other alleged violations were all conditions that were lawfully imposed. So your client at the revocation hearing agreed that there had been violations of the null conditions. The government waived, I assume, any argument that the first four that were valid conditions had been violated, and that was the basis of the agreement. And that seems to me to invite the error, the exact error that you're raising here on appeal. So no, Your Honor. What Mr. McClurin did is he admitted that he engaged in the conducts underlying those two conditions. He did not ask the court to revoke his supervised release, and he certainly did not ask the district court to send him to prison. So by analogy, think of the McKinney case which we cite. In that case, the defendant pled guilty to the 924C count, and other charges were dismissed. Nevertheless, on 2255, he was able to get relief because the predicate underlying the 924C was invalid. This Court did not say that he had somehow invited the error by pleading guilty to the 924C count. He simply pled guilty, and there's no invited error there. It's the same way here. He admitted that he engaged in the conduct, but he did not ask the court to revoke his supervision. But there were other violations that the government did not pursue. Is that right? Yes. And those violations are violations of admittedly valid conditions that had been imposed in 2013. Yes. So what are you asking us to do now at this point? I'm asking the court to vacate the 2024 judgment that revoked Mr. McClurin's supervised release because it's based on finding that he violated a condition that didn't exist. It was a condition that was not part of his sentence, and therefore, it cannot serve as a basis for revoking his supervision. And again, the district the government, I'm sorry, doesn't really dispute that. They do not dispute that if the condition was not part of his sentence, he cannot be revoked for violating it. That seems to be common ground. The government's objections are all prestigial. They argue that the conditions actually somehow became part of the sentence after direct appeal was over. But again, Newby definitively rejects that argument. In Newby, So if we were to do what you're suggesting, we would then be sending it back to the district court to do for a do-over, essentially a new revocation hearing based on the lawfully imposed, the violations of the lawfully imposed conditions? So I think the remedy is to remand, to vacate the judgment in 2014, remand with instructions to dismiss the petition, which is what this court did in a published decision issued earlier this year called United States v. Wheeler, where the government The district court erroneously admitted certain evidence under Rule 32.1, and this court remanded and said to vacate the revocation judgment and dismiss the petition. And what about the conditions that were lawfully imposed, according to you, in 2013? So if Mr. McLaurin had admitted to violating those conditions, then we wouldn't be here. No, that was a deal. I mean, he admitted that, and the government didn't pursue the others. But, Your Honor, that's true in every plea agreement. Again, that would be the case. I know, but if you wanted to – if you're going to have us undo the deal, you can't hold the government – you can't get – force the government to now give up its arguments. It's going to then press the ones that were legitimate. So in a case called United States v. Adams, which this court decided in 2016, the defendant filed a 2255 long after he had pled guilty in which other cases were – charges were dismissed, and this Court granted the 2255 because the 922g1 predicate was inbound. And the government said, ask this Court, okay, remand and let us reinstate the original indictment so we can pursue those other charges. But conditions of supervised release are different. They're not – they're not – the district court at any point can impose new conditions of supervised release so long as there's a new hearing. So even if – what the district court could do here, I think, is under Rule 32.1, simply modify the conditions of supervised release. Yes, absolutely, Your Honor. We agree. So if the case goes back, the government or the probation officer or the court by itself could file a motion to modify Mr. McCormick's conditions, and the court could then add the conditions. We'd be right back where we are then. Yes, going forward, absolutely. The government – I mean, we're on plan error, aren't we here? Yes, Your Honor. I mean, so if we end up in the same place, it hardly says on the error standard. Well, that's – the error has already happened. The modification hasn't happened yet. So the hypothetical modification that may or may not come to pass can't, you know, cleanse an error that's already occurred. So there wouldn't need to be a complete – I suppose there would need to be a hearing unless it was waived to impose new conditions of supervised release that were the conditions that were standard conditions that were, you're saying, are nullity based on the retroactive Rogers application. The court could then reimpose or impose them properly, and then at that point, there could be a revocation hearing based on those violations. Well, going forward, there could be. I mean, I – yes. If the court remands, the court – the district court can then modify supervised release to add those conditions. I don't think Mr. McClorn could then be revoked for having previously – Although he could be revoked for the violations that the government didn't pursue in the prior revocation hearing. In theory, yes. Again, I think under the Adams case that I was just describing, where this Court said, no, we're not going to reinstate those because that's vindictive, I think probably, you know, there's a due process question there. But the court can just sort of assume, for sake of argument, yes, on remand, there could be a new hearing. But that just – you know, that means that the parties can address that on remand. It's not a reason not to find an error here. There was an error. It's a clear error. It resulted in Mr. McClorn going to prison, so it satisfies the third prong. And it also, you know, impugns the fairness and integrity of judicial proceedings and public reputation if we're sending people to prison for engaging in conduct that they were not prohibited from engaging in. And that is – that's the question at the fourth prong. Would the public have a diminished view of judicial proceedings if it knew what was happening here? And I think the answer is yes. I'm sorry, Justice Kennedy.  Well, that was the purpose of Rogers itself, the Supreme Court. And that is, you shouldn't have a sentence that was not properly, you know, given.  And so it reached even the fourth prong of clear error. Correct. And the – you know, what happened here is, again, Mr. McClorn was sent to prison for doing something that he actually was not prohibited from doing. And that – and I think if the public knew that people were being sent to prison for engaging in conduct that they are actually allowed to engage in, people would be very troubled by that. That absolutely affects the public reputation and integrity of judicial proceedings. And so all four prongs of plain error are satisfied. Unless the Court has more questions, I'll save the rest of my time for rebuttal. Thank you, Mr. Huckabee. All right. Mr. Medinger. May it please the Court, Your Honors. My name is Jason Medinger. I'm here on behalf of the United States. Your Honors, the defendant here in this case is seeking to violate the bargains that he struck with the government. He's trying to violate the bargain that he made at the revocation hearing where he admitted to violating these conditions, which he now says are nullities. He's trying to violate the terms of his plea agreement. And what he's trying to get for himself is essentially a get-out-of-jail-free card that says he can violate with impunity any standard supervised release condition that's in his judgment. This Court should have no part of this. I didn't hear counsel's argument at all. He didn't say that at all. I mean, I know you're counsel for the United States, but it's hyperbole in terms of how you represent the argument. What he's saying is that the Supreme Court said this is a rodginess error, and that's why it's retroactive, because you can't bargain away what was not a legal sentence. So that's what he's saying. He's not saying get out of jail. As a matter of fact, I thought counsel was very, very respective in terms of even the Court's questions, like things that really the district court will have to decide later if it's remanded. That's that. It's not a get-out-of-jail-free card. I mean, matter of fact, in terms of supervised releases, sometimes it's more shackling than others, and people can't get jobs. They can't get to things like that. It becomes a sword of Damocles over their head. So I don't think that's argued at all. Instead, the question is, I'm going to ask you, isn't Rogers in this Court, say it's retroactive? So we have applied Rogers on direct appeal retroactively. So someone has a judgment. They say there's new conditions in my judgment that I was not aware of. On direct appeal, this Court certainly has corrected Rogers' error. No question. And that even applies to cases that the original sentencing happened prior to Rogers.  We are here in a fundamentally different posture. We are here now on, you know, 10 years after the judgment. We are here after Mr. McLaurin has foregone any ability to appeal. He's violated Federal Rule of Appellate Procedure 4. Really what my colleague, I hope he'll address on rebuttal, but didn't here, we have to talk about Brantley. Brantley, in our view, decides this case. So this Court held in Brantley that a Rogers error, a plain and obvious Rogers error, can be forfeited if you don't raise it on direct appeal. Here, we are well past that. Yes, sorry, Your Honor. What about Newby? Didn't Newby – wasn't Newby years after the Rogers error, and, in fact, the Rogers error took place before the Rogers decision? So it certainly was, Your Honor. Here's the difference on Newby. Newby had a new judgment. In other words, they had a new amended judgment after the First Step Act, and it was a new error. In other words, they did a new Rogers error in creating the new amended judgment. So that – Well, didn't the district court here do the exact same thing when it reimposed the same conditions in the – at the revocation hearing? The district court did the same thing here. There was a new Rogers error at the revocation hearing. So, Your Honor, that is actually not being challenged here. In other words, Mr. McBeth, as I understand it, is not challenging the supervised release conditions that were imposed at the revocation hearing. He's going all the way back to 2013. That's why we say he's got a Brantley problem and a Federal Rule of Appell Procedure 4 problem and a law of the case problem and an appellate waiver problem. He's going all the way back in time to 2013 because there was not those kind of errors in 2024. As you said also, those were invited errors. They admitted to those violations. But this is not a direct appeal of supervised release conditions raised in 2024. This is going back to an error that happened a decade ago. Can we address the supervised release Rogers issue from 2024? So, Your Honor, I think the argument has been waived, so I would say at this point you cannot. That's not something that they are challenging. I do want to go to Brantley, though, because I think the language in there is quite important for this case. So what Brantley said was even the most obvious Rogers error, the one that is clear as day, if an appeal is not taken at the appropriate time, it becomes part of a valid and binding judgment. And that's the words that we rely upon here. The judgment of 2013 is valid and binding. That's the rules under which we have to operate. And there simply is no basis at this point to go back and do it. You know, Brantley involved an individual who didn't file appeal for 223 days. He was 223 days late. Mr. McLaurin is a decade late. There is no way to resurrect that claim. The other problem with these claims of raising these kind of errors at the revocation hearing, it also would violate this Court's precedence in Sanchez and Johnson. And so this Court said you can't wait until a revocation hearing all the way at the to go back and try to challenge supervised release conditions that were imposed at your original sentencing. And that rule makes a lot of sense. When you see an error, you have to raise your hand and try to correct that error as soon as possible. You can't wait until after you violate it to say, well, it was a nullity in the  And that's what the defendant is trying to do here. So to get to where So you wait until the day after the Supreme Court case came up? The day after it comes up? And sorry, Your Honor. When do you wait? When Rogers came up, you do it immediately? After that comes up? So our contention, Your Honor, would be that in 2013, Mr. McLaurin had to essentially raise what is now a Rogers claim to preserve it. And he did not. That claim could have been raised and it was not. That wasn't a law then, was it? It's just Niemeyer pointed out. That wasn't. They send us all the time. Look, we'll get this straight. You'll get the written terms later. They didn't know that what you said orally was going to be that binding in terms of a valid sentence. So you can't have it both ways there. Well, you know, I think the person that's trying to have it both ways here is frankly the defendant. Instead of calling it the Rogers doctrine, we could have called it the McLaurin doctrine. He could have raised these claims. He could have been the person that blazed that trail. That argument was available to him. And again, we look at this Court's precedent going all the way back to 1965. United States v. Morse talking about if there's a difference, a discrepancy between the oral pronouncement and the written judgment. These claims were certainly there. They just weren't raised. And so that's why under Brantley, they're waived by, again, a matter of a decade. I'm looking here at Brantley and it doesn't seem to me to say what you suggest it says. It does say that the judgment stands, which is exactly what your colleague on the other side said. He's not challenging the judgment itself. But what it does say is that the conditions that were imposed improperly are nullities. So the judgment stands and is presumptively valid and binding. But it doesn't say that the conditions that were unlawfully imposed are included in that judgment. It just suggests that the judgment exists without the nullities, which is, I think, exactly what your colleague is saying. He said specifically he's not challenging the 2013 judgment. Only the revocation that are based on null conditions. You know, so, Your Honor, I want to suggest that I think what, in fact, he is doing is challenging the 2013 judgment. That's the only way he gets there. The only way that he has an argument about 2024 is to first make a facial attack as to 2023. You know, Judge Schumacher does that. As to the nullity aspect of it, the nullity, not the whole judgment, just the fact that it's a nullity, the sentence, that part of the revocation terms is a nullity. That's all. It's a dissection. It's not a complete radical removal. Well, again, that's, again, I think what, frankly, the defendant is asking for. This goes to Judge Niemeyer's question. Are we going, when we say the judgment is valid and binding, the whole thing is valid and binding, the whole thing, which includes the supervised release conditions. That's not what the case law was. Judge Burnett just read you. It said that, yes, it is the judgment, but the nullity aspect, a nullity, a legal nullity means it never happened. It's null and void. That part of it. That's the only part. And that's what Rogers deals with. We do it all the time. I mean, you know, you just look at the number of Rogers cases that we have. They just go through. They let out oral arguments. They normally handle them in a different manner. It's the same thing, that part of it, because the law requires you to, you know, and that's what our framers did about the Constitution. It makes us such a rare country. And that is, that's important, that you ought to know what you're being sentenced for and being told. And that's what the Supreme Court said. That's not happening now. It's no fault to any judge who didn't do it before. But it is a way of cleaning up and being a better representation of what the constitutional protections are. It's just that aspect of it. So I understand that 100%, Your Honor. And actually, I agree with it. We do have to inform individuals of what they're going to be bound to. Our argument here is that he was informed in the written judgment. And if he felt like there was some discrepancy that he had to raise, he had to raise it a very, very long time ago. And I would say to the Brantley question, you know, essentially, this is a forfeited claim. In other words, if you have an issue with your judgment, you have to raise it in a timely way. If you don't, your judgment then becomes calcified. It becomes locked in amber. That now is the judgment that you have to abide by. Time does not ripen a nullity. Well, again, what we would say. You disagree? Time does not ripen or improve what is null. So I would disagree with that, Your Honor. Tell me how something that is legally null and void over time becomes somehow null and void, and then life comes into it again. So, Your Honor, there's all sorts of – and I look at it in the context of error. You know, errors happen with some. Errors are different. That's in terms of making a judgment about something you made in error. But when it's declared a nullity, it's null and void. I'm asking you again, how does it revive life over – because time has? So what I can look at, Your Honor, is a number of contexts where this happens, and we are okay with this. All right. Let's look at, you know, Rule 35, for example. You know, there are errors in judgments that can be corrected under Rule 35. The window is very narrow. If you don't do it, you've waived it. Rule 35 has been determined to be jurisdictional. And so that Rule 35 doctrine, which has been accepted by this Court and others, that says if you miss a window to challenge something in your judgment, even if it's the most obvious error, we're not going to let you go back. For example, you just gave me something that was already declared null and void. So, Your Honor, again, this is just an error that was passed over. Give me an example where something is declared null and void and it's revived. Again, I think – I don't think you can. Well, Your Honor, I think – I don't think you can. Your Honor, what I would say is – Okay. If you follow the logic of Brantley, once a condition is imposed, even if, again, using the words of my colleague, if it's a nullity, if it's something that wasn't orally pronounced, it becomes part of the judgment after – It's not the word of your – the term of your colleague. It's the term of our precedent. And, in fact, what – what Brantley says is that those conditions are null, that the judgment stands, but those conditions are null. And then, again, in Newby, we said the same thing. And in Newby, the judgment – although the judgment stood, those conditions were null. And that was our term, the nullity term. And the – specifically, in Newby, we said that those – because those conditions were never imposed in the first place, they could not be carried forward through the district court's amended judgment. And so they were null at the time they were imposed. Right. So I guess, Your Honor – and here's where I'm trying to square the circle. In my view, Brantley would have to come out a different way if that is entirely the right answer. In other words, Brantley would have said, even though you've waived this argument under Federal rule of appellate procedure for the ship has sailed, it's a nullity, so, therefore, we can go back and correct it. Or we can make sure that you're not held to that. We can excise that out of your judgment. But that is not what this Court held in Brantley. So in my view, you just – I can't square those two. You have to say, I think, if Federal rule of appellate procedure 4 means if you don't raise the issue, you've waived it, and it's now part of your judgment forever on direct appeal, certainly now that we're here in this context, I think the answer has to come out the same way. I just don't see a way to do it otherwise. I could switch gears just very briefly to talk about one other issue, and that is our appellate waiver argument, because I would like to talk about that for just a minute, because I think, Judge Gregory, some of the questions you had about this is, well, Rogers wasn't the law at the time. And there is a very defined path of precedent, if you will, that indicates that an appellate And so here we had what I consider to be a zipper clause appellate waiver. It's any issue that relates to, in any way, the supervised release conditions. That was the bargain that we struck with the defendant. We agreed to dismiss a 924C charge and a 924O charge. That was the benefit of our bargain. And now here we are having to deal with an appeal related to an issue that relates to a supervised release condition. And so we've cited cases indicating that appellate waivers do apply to supervised release conditions that is, I think, uncontroversial. And so under our appellate waiver, even if you say under Federal Rule of Appellate Procedure 4, we're going to allow this claim, certainly under our appellate waiver, it's a matter of contract between the parties. We negotiated for global peace, and yet here we are on appeal with a defendant who admitted to these violations at the revocation hearing and now still wants to take an appeal and void essentially all of his supervised release conditions. That, to me, is the government not getting the benefit of its bargain, and we respectfully ask this Court to enforce the waiver here. And I think that's another ground on which this Court can and should affirm. The last point that I'd like to make, unless there's any further questions, is just to recall that we're here on plain error. And so if we get through the prongs of plain error, certainly on the second prong, the defendant here has to show that the error is plain. And what I would ask is, rhetorically, what case applies Rogers in this setting? In other words, we're not here on direct appeal. We readily agree that there are a plethora of Rogers error cases on direct appeal. But if we're talking about the plain error context, what case shows that this kind of error is going to be plain at a revocation hearing that takes place a decade after this judgment was entered? I'm not aware of any such case, and I don't think my colleague has cited any of those cases either. So we'd respectfully submit that this error was not plain. And then we go to the fourth prong of the plain error analysis, and this goes to whether there was a miscarriage of justice, the fundamental fairness of what was imposed here by the district court. And in our view, it's fundamentally unfair to allow a defendant to get to a revocation hearing to say, yes, I fully admit that I violated Conditions 6 and 10, and then two days later, as you said, Judge Berner, to file a notice of appeal, and here we are saying, oh, they were nullities all along. That, to me, undermines the fundamental fairness of judicial proceedings. They led Judge Berdard down the primrose path to say, you can revoke me. I did it. I admitted it. And then here they are arguing to this Court something very, very different. And that, to me, is a failure on the fourth plain error prong. And so I think that's another reason that we respectfully ask that this Court would affirm. Thank you, Your Honors. All right. Thank you, Mr. McBride. Thank you, Your Honors. A couple of quick points. I'd like to start by addressing Brantley. The factual context of Brantley is that the defendant filed his notice of appeal 223 days after the deadline, after the judgment was entered. And he argued on appeal that because there were nullities in the judgment, the judgment was, quote, invalid on its face and automatically moot. In other words, it was as if the judgment had never been entered at all. As if there was no judgment. The whole thing was void. And, therefore, the 14-day clock in Rule 4 never started to tick. That is the only thing this Court addressed in Brantley. Brantley did not hold that even after a judgment, when a judgment becomes final, orally unpronounced conditions become part of the sentence. And we know that because Newby cited, relied upon, and affirmed the holding of Brantley and nevertheless held that even after a judgment is final, following direct appeal, orally unpronounced conditions in that judgment are not part of the sentence. So Brantley does not help the government here. Second, the government was suggesting that Mr. McClorn forfeited this issue because in 2013 he should have filed a direct appeal raising this issue. But this Court has already squarely rejected that argument in the Sissing case, which we cite in our reply brief. In that case, the briefs were filed, and after the briefs were done, Rogers came out. The defendant then filed a 28J letter raising the Rogers issue. The government said it wasn't in the opening brief, you've waived it. This Court said no, Rogers wasn't available until after the briefing was filed. So you can't waive a case that isn't even available to you. And, importantly, the Court said that is so even when the new case does not mark a dramatic departure from existing law. Even if it doesn't upend previous law, even if it just extends previous law, you still can't waive that case just because you didn't raise it in your opening brief. So to suggest that in 2013, Mr. McClorn. The issue was raised in Rogers. Why couldn't that same issue have been raised by counsel in this case? In other words, if the defendant was upset that the conditions were in the judgment but had not been announced in court, he could have raised that, but more pronounced is that when he's brought to court under those conditions that were in the judgment, the written judgment, he reaches an agreement that says, okay, government, you don't press conditions 1, 2, and 3, I'll plead to conditions 4 and 5, and the Court says fine and imposes a new sentence, which has been served the 90 days, and he's now on a new terms of supervised release. It looks like everything's sort of passed. I mean, the first thing that comes to you is a certain sense of mootness. We're challenging conditions of supervised release that are no longer applicable because he has new terms of supervised release. We have a sentences were served. There was an agreements reached. Nobody's talking about Rogers at any point. And now on appeal, we have to go back through all of that. I mean, even the original sentence was a subject of a plea agreement where the government gave up some things and you got some benefits. Sure. So, Your Honor, a couple points. So first, to your first point about Mr. McClurin could have put together the Rogers argument in 2013, the government made that exact argument in Sisson and the Court rejected it. It said that the defendant is not required to, quote, break new ground by raising the Rogers error and that it would, quote, blink at reality. I understand that. And I understand that as a pragmatic matter. Okay. But even after Rogers comes out, it sits there pretty plain, and we don't hear anything about it. As a matter of fact, we hear about a deal, and the deal then really abrogates all the original terms and imposes a 90-day sentence, plus new terms of supervised release, which he's under now and which are not being challenged. And so the — I understand your argument. I just got a lot of logic to it. But, Your Honor, if you're — The originality and mootness and ultimate effect on him, there's hardly any effect on him. He's under new terms of supervised release now, which are not being challenged, and so it's almost academic. So on the mootness point, Your Honor, this Court's case law in the case called United States v. Ketter holds that even after a defendant has served the imprisonment term imposed on revocation, a case is not moot as long as he is still on supervised release. If he had finished both imprisonment terms and served the imprisonment term he would  Sotomayor, I'm not arguing, I'm invoking or suggesting the concept of it, because nothing that you're challenging is in force anymore. The original sentence was served, the incarceration was served, the supervised release has been displaced. There was a Rogers error there. He agreed to revocation, got a new sentence, has new terms of supervised release. And the my point is it seems like it's a bygone. So if your point is that the practical real world consequences are fairly minimal in this case, I'm not going to dispute that. But the way the case law is. I'm just trying to find out how does it affect him at all? Well, because he served, so to go back to the mootness point, the reason the case does not moot when someone still has a supervised release term to serve is that on remand, if the defendant says, look, the Fourth Circuit vacated my revocation, he could then move to reduce his term of supervised release, the length of it, for that reason. So that's what's at stake here. What is the current term, supervised release? Well, following the revocation judgment, the Court imposed 42 more months of supervised release. Forty-two months? Yeah.  So I believe he's done with supervision in January of 2027. I'm not sure about that. But just last point on the sort of effect on the prejudice, which is, I think, part of what you're getting at, you know, we cite McKinney in our case, in our brief, but the more on-point case is one we cite in our reply brief, Doswell, which is a supervised release case where the Court did the prejudice analysis exactly the same way the Court did in McKinney, by saying, no, we look only at charges that were actually – that he actually pled to, not charges that were dismissed.  Thank you, Your Honor. Thank you very much, yeah. We'll come down and greet counsel. Mr. McBeth, you were court-appointed. No, Your Honor, this is our time. Well, I was going to give you a lot of credit for being court-appointed, but I still give you credit for being an effective lawyer. Thank you. We'll come down and greet counsel. Thank you.
judges: Paul V. Niemeyer, Roger L. Gregory, Nicole G. Berner